969 So.2d 671 (2007)
Katheryn Aronson, Wife of/and Mark BEST
v.
STATE FARM FIRE AND CASUALTY COMPANY.
No. 2007-CA-0573.
Court of Appeal of Louisiana, Fourth Circuit.
October 10, 2007.
*673 Laurence E. Best, Mark E. Best, Best Koeppel, New Orleans, LA, for Plaintiffs/Appellants, Katheryn Aronson and Mark Best.
James R. Nieset, Jr., Nicholas C. Gristina, Hoy R. Hughes, Porteous, Hainkel & Johnson, LLP, New Orleans, LA, for Defendant/Appellant, State Farm Fire and Casualty Company.
(Court composed of Judge DENNIS R. BAGNERIS, SR., Judge MAX N. TOBIAS, JR., Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD, Judge LEON A. CANNIZZARO, Jr.).
LEON A. CANNIZZARO, JR., Judge.
This case involves a claim made by Katheryn Aronson Best and her husband, Mark Best, (the "Bests") under a renter's insurance policy (the "Renter's Policy") issued to them by State Farm Fire and Casualty Company ("State Farm"). State Farm denied coverage under the Renter's Policy, and the Bests filed suit to enforce it. The trial court rendered judgment in favor of the Bests in the amount of the limits on the Renter's Policy and also assessed statutory penalties against State Farm. State Farm is appealing the judgment against it, and the Bests are appealing the amount of the penalty awarded to them.

FACTS AND PROCEDURAL HISTORY
Prior to Hurricane Katrina the Bests lived in one side of a two-story duplex located in the Lakeview area of New Orleans (the "Apartment"). The duplex was owned by Mrs. Best's mother, Judith Allain. Both sides of the duplex had two stories. During Hurricane Katrina, the first story of the duplex was flooded on both sides. The hurricane also caused damage to the second story of the duplex on both sides as well as to the contents of the Apartment.
The Renter's Policy covered damage caused "when the direct force of wind . . . damages the building causing an opening in a roof or wall and the rain, . . . enters through this opening." Excluded losses included those caused by water damage, including flood and overflow of a body of water, whether or not driven by wind.
Mrs. Allain's ownership interest in the duplex was insured under an owner's insurance policy that had been issued to her by State Farm (the "Owner's Policy"). The Owner's Policy insured against damage caused by various perils. However, the Owner's Policy, like the Renter's Policy, did not cover damage caused by flooding.
Mrs. Allain made a claim under the Owner's Policy for the damage that was caused to the second story of her duplex. The Bests later made a claim under their Renter's Policy for the damage to the contents of the Apartment. Neither Mrs. Allain nor the Bests made any claims for damage to the first story of the duplex or to its contents, because both Mrs. Allain and the Bests acknowledged that the damage to the first story was caused by flooding and that flooding was an excluded peril under both the Owner's Policy and the Renter's Policy.
Mrs. Allain's claim for damages was paid by State Farm based on State Farm's determination that the damage to the second story of the duplex was caused by wind, not by flooding. The Bests' claim *674 for damages was denied by State Farm on the grounds that State Farm had determined that the damage to the contents of the Apartment was caused by flooding, not by wind.
Different adjusters had been assigned by State Farm to adjust the claims under the Owner's Policy and under the Renter's Policy. After the Bests learned that Mrs. Allain had been paid by State Farm for the damage to the second story of the duplex that she incurred as the owner of the property, they contacted their adjuster at State Farm and sought a reconsideration of their claim. The Bests notified their adjuster of the discrepancy between the determination of the adjuster under the Owner's Policy and their adjuster's determination regarding the cause of damage to the second story of the duplex. The Bests' adjuster again denied their claim.
The Bests then filed the instant suit. A trial was held before the trial court judge, and she found that State Farm was liable under the Renter's Policy. At the trial, the Bests presented evidence to show that the damage to the contents of the Apartment was caused by wind rather than by flooding. They also presented evidence of the value of the contents, including a full length mink coat, that were damaged. In her judgment, the trial court judge ordered State Farm to pay to the Bests under the Renter's Policy the $20,000.00 policy limit for the contents of the Apartment and the $5,000.00 policy limit under a fur endorsement to the policy. The trial court also awarded penalties to the Bests under La. R.S. 22:658 for State Farm's arbitrary and capricious failure to pay the Bests' claim within thirty days after satisfactory proof of their loss was presented to State Farm.

DISCUSSION
Both the Bests and State Farm appealed different aspects of the trial court's judgment. State Farm appealed the finding of coverage under the Renter's Policy, and the Bests appealed the amount of the penalty that they were awarded under La. R.S. 22:658.
Standard of Review
In Rosell v. ESCO, 549 So.2d 840 (La. 1989), the Louisiana Supreme Court discussed the scope of the appellate court's review of a trial court's findings of fact as follows:
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. . . . Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. . . .
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.
Id. at 844. See also Stobart v. State, Through Dep't of Transp. and Dev., 617 So.2d 880, 882 (La.1993); Harvey v. Cole, 00-1849, pp. 2-3 (La.App. 4 Cir. 1/23/02), 808 So.2d 771, 775-76.
Where the trier of fact, however, has not applied the correct law in arriving at its conclusions, the standard of review that *675 this Court must use is different. In the Rosell case, the Supreme Court stated:
Nevertheless, when the court of appeal finds that a reversible error of law or manifest error of material fact was made in the trial court, it is required to redetermine the facts de novo from the entire record and render a judgment on the merits.
549 So.2d at 844, n. 2.
Assignments of Error
State Farm Assignment of Error No. 1: The trial court erred by awarding the Bests the policy limits under the Renter's Policy, because the Bests failed to meet their burden of proving that damage to their personal property was caused by a peril covered by the Renter's Policy.
In Carriere v. Triangle Auto Service, 340 So.2d 665, 666 (La.App. 4 Cir.1976), this Court stated that "[i]n an action on an insurance contract the plaintiff has the burden of pleading and proving that his claim falls within the general policy, while the insurer has the burden of proving exclusions from coverage." See also Davidson v. United Fire & Cas. Co., 576 So.2d 586, 590 (La.App. 4 Cir.1991). In Couch on Insurance 3d, § 153:17, the burden of proof for claims under insurance policies, such as the Renter's Policy, that involve exclusions for losses caused by water, whether or not driven by wind, was discussed as follows:
Policies typically contain a provision excluding loss caused by water whether driven by wind or not, unless the insured property first sustains actual damage by direct force of wind, and water enters the property through openings made by direct action of the wind. This exclusion is considered clear and unambiguous and will be enforced according to its terms. Thus, both wind-created openings and the passage of rain through those openings into the damaged property are conditions precedent to recovery.
In order to satisfy the aforementioned conditions, the insured need not establish that the wind actually created a hole in the structure, but instead must only demonstrate that the direct force of the wind created an opening in the building through which water entered. Thus, in accord with general rules of proximate cause, water entering a structure through a breach caused by the impact of a wind-blown object qualifies as damage by wind, bringing the loss under the policy coverage.
(Footnotes omitted.)
In the instant case, Mr. Best testified at the trial regarding the height to which the flood waters rose in the duplex. He testified that there were lines of discoloration indicating the height of the flood waters that inundated the first story of the duplex. He testified that the lines of discoloration indicated that the flood waters rose to the second step from the top of the stairway leading from the first story to the second story of the Apartment. He also testified that although the floor of the first story of the duplex was covered with mud and debris, there was no sediment of any type on the carpeting and the tile floor of the bathroom on the second story of the Apartment. Additionally, Mr. Best said that furniture and other objects on the first story of the Apartment floated away from their original locations, but everything on the second story remained in place.
Mr. Best measured the height of the water lines on the outside of the houses adjacent to the duplex.[1] He testified that *676 the water lines on the neighboring properties were below the maximum height of the first story of the duplex, but he also acknowledged that he did not know the elevations of the neighboring properties and that the measurements were made more than a year after Hurricane Katrina.
Mr. Best further testified that although there were water stains only on certain parts of the second-story ceiling of the duplex, there was a split in the ceiling. Although he did not witness rain water from Hurricane Katrina entering the duplex, he did know that there was water on the floor of the second story of the Apartment.
Mr. Best also testified that the mold line on the walls of the second story of the Apartment was uneven, that the water damage to the furniture on the second story rose to varying levels on the legs of the furniture, and that the carpet was wet but not soiled with mud and sediment as was the floor of the first story of the duplex. For these reasons, he believed that rain water from Hurricane Katrina came in through the roof of the duplex and soaked the second story carpets. The moisture in the carpets then wicked into the furnishings on the second story.
Mrs. Allain also testified at the trial regarding the condition of both sides of the duplex after Hurricane Katrina. She described the condition of the first story of the duplex. She stated that on the floor of the first story there were about four inches of sludge and that the furniture and appliances located on the first story had floated away from their original locations. In contrast, the carpeting on the floor of the second story was clean except for the footprints caused by people walking on the wet carpets. She also described large areas of mold growing on the ceilings and on the walls of the second story of the duplex. Mrs. Allain stated that she observed cracks in the sheetrock in the ceiling, including cracks where the sheetrock tape was peeling from the joints of the sheetrock. She also testified that a new roof had been installed on the duplex just prior to Hurricane Katrina and that she saw ceiling damage in virtually every room on the second story of the duplex.
Mrs. Allain further testified that the flooring of the bathrooms on the second story did not have any sediment of the type that was on the floors of the first story. She also said that there were no water marks, just mold, on the walls of the second story. Further, Mrs. Allain stated that she was paid about $61,000.00 by State Farm for the damage to the second story of the duplex, including the damage to the ceilings, walls, doors, carpet, and baseboards. There was never any communication from State Farm to Mrs. Allain questioning whether the damage to the second story was caused by anything other than the type of wind damage that was covered under the Owner's Policy.
Finally, Mrs. Allain testified that she thought that there were two adjusters who were sent by State Farm to investigate her claim under the Owner's Policy. No one from State Farm ever contacted her in connection with the claim under the Renter's Policy.
Mr. James S. Gentham, one of the two claims adjusters assigned to handle Mrs. Allain's claim under the Owner's Policy, testified at the trial. He confirmed that State Farm had initially paid Mrs. Allain $31,000.00 under the Owner's Policy for the damages that she, as owner of the duplex, suffered with respect to its second story. He further confirmed that Mrs. Allain had received an additional payment *677 in the amount of $30,000.00 after a re-inspection of the damage. Mr. Gentham also testified that he inspected the roof of the duplex and that he found a hole in the roof. Also, a vent pipe had been knocked off of the roof, and that resulted in another opening in the roof.
Additionally, Mr. Gentham testified that it was his impression that the water that entered the second story of the duplex entered through the hole in the roof. He further stated that water could have also entered the second story through an area of missing roof shingles that he had identified. Mr. Gentham also said that water can travel beyond its original entry point when it enters through a hole in a roof. Finally, Mr. Gentham confirmed that it was his opinion as the adjuster of Mrs. Allain's claim under the Owner's Policy that the cause of the damage to the second story of the duplex was water intrusion through the areas of the roof that had been damaged.
After Mr. Gentham testified, Maria P. Gore, the second adjuster for Mrs. Allain's claim under the Owner's Policy, testified. She said that she went to re-inspect the second story of the duplex twice and that the re-inspection resulted in State Farm making a second payment to Mrs. Allain on her claim. She stated that the payment was made for wind damage.
Ms. Gore further said that the first story of the duplex was damaged by flooding. She also testified that the ceiling wood on the first story had been wet and that there was corrosion on electrical outlets near the ceiling that she believed to be the result of contamination with salt water from the flooding that had occurred. The electrical outlets were two to three inches below the flooring of the second story of the duplex. Ms. Gore also confirmed that when a re-inspection is conducted in connection with a disputed claim under a State Farm insurance policy, the amount awarded to the insured can stay the same or be increased, but it cannot be decreased.
Micah Joseph Taranto[2], the adjuster for the Bests' claim under the Renter's Policy, testified at the trial. Prior to Hurricane Katrina, he had been a towboat pilot, and he had no prior experience in insurance adjusting. He did, however, attend a week long class in insurance adjusting prior to working on Hurricane Katrina claims.
Mr. Taranto testified that he went one time to the Apartment. Although Mr. Taranto stated that the floodwaters reached the soffit of the first story, in his deposition he had testified that he never made a complete height measurement of the flood line. He also confirmed in his trial testimony that at his deposition he said that the water line was a foot to a foot and a half high on the second story. Mr. Taranto further testified at the trial that when he was notified by the Bests of the discrepancy between the findings of the adjusters for Mrs. Allain's claim under the Owner's Policy and his findings, he did nothing to resolve the discrepancy. He could not recall whether or not he made any effort to determine whether water dripped on any of the furnishings or other contents of the second story of the Apartment.
One admission that Mr. Taranto made at the trial was that the nature and extent of the sheetrock damage on the Apartment's second story ceiling were sufficient to indicate that water not only came through the roof but also damaged the sheetrock. Another of Mr. Taranto's admissions was that *678 he made no effort to examine the roof of the duplex for the presence of holes. He also admitted that although he thought that the floodwaters rose one to one and a half feet in the second story of the Apartment, there was no evidence that anything on the second story had floated in the water. Further, he testified that there was no muddy sediment on the floor of the second story of the duplex as there was on the floor of the first story.
Although Mr. Taranto had stated that the flood waters were one to one and a half feet high on the second story of the Apartment, he admitted that photos introduced into evidence showed that the water stain on a leg of a piece of furniture was only four or five inches high. He said that he had not measured anything when he visited the Apartment and that he did not have a tape measure with him then. Finally, Mr. Taranto agreed that the facts and circumstances that he observed did not indicate the presence of flooding in the second story of the Apartment.
When he testified regarding the Bests' notification that the adjusters for Mrs. Allain's Owner Policy had reached the conclusion that the damage to the second story of the duplex was caused by wind, not flooding, he said that he contacted his supervisor. Nevertheless, he was not aware that the supervisor ever consulted with the adjusters for Mrs. Allain's claim. The supervisor simply told Mr. Taranto that nothing further needed to be done with the Bests' claim and that he should again deny it.
Mr. Taranto further testified that the waterlines on the furniture in the second story of the Apartment indicated flooding. He then stated that he had no doubt that flood water protruded into the second story of the Apartment, although that statement contradicted some of his previous testimony.
In the instant case there were two different sets of facts presented to the trial court. According to the testimony of Mr. Gentham and Ms. Gore, the damage to the second story of the duplex was the result of wind damage. Mr. Best and Mrs. Allain also testified as to facts from which one could conclude that the damage to the second story was the result of wind damage. Mr. Taranto testified that the damage to the second story of the duplex was the result of flooding, but, according to the trial court judge, his testimony was inconsistent. In finding in favor of the Bests on the issue of coverage under the Renter's Policy, she clearly believed the testimony of Mr. Gentham, Ms. Gore, Mr. Best, and Mrs. Allain over the testimony of Mr. Taranto. Because her findings of fact regarding whether wind or flooding damaged the second story of the duplex were a matter of credibility of the witnesses, we must defer to her findings. There was clearly sufficient evidence presented at the trial for the trial court judge to make a factual finding that the source of the damage to the Apartment was caused by wind and not by flooding.
We find that the Bests proved their case against State Farm by a preponderance of the evidence. This assignment of error is without merit.
State Farm Assignment of Error No. 2: The trial court erred in awarding penalties against State Farm under La. R.S. 22:658 when the Bests did not specifically plead a claim under that statute.
State Farm contends that to receive an award of penalties under La. R.S. 22:658, the statute must be specifically pled in the petition seeking to enforce payment under an insurance policy. La. R.S. 22:658, as in effect prior to August 15, 2006, provided in relevant part:

*679 A. (1) All insurers issuing any type of contract, other than . . . [life insurance and health and accident policies], shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.
. . . .
(4) All insurers shall make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim.
B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim . . . when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of twenty-five percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, twenty-five percent of the difference between the amount paid or tendered and the amount found to be due.
(Emphasis added). Effective August 15, 2006, La. R.S. 22:658(B) was amended to provide for a fifty percent, rather than a twenty-five percent penalty, and to provide for reasonable attorney's fees and costs.
In Rousseau v. State Farm Mutual Automobile Insurance Co., 97-2333 (La.App. 4 Cir. 11/26/97), 703 So.2d 180, this Court found that to state a cause of action for statutory penalties under La. R.S. 22:658, it was not necessary to track the language of the statute. This Court stated as follows:
Relator contends that the petition is defective because it does not contain allegations tracking the statutory language in R.S. 22:658 or R.S. 22:1220. This argument is without merit. A petition need not allege the law, only the facts, and if those facts taken as true provide a basis for a legal remedy the petition states a cause of action.
97-2333, p. 3, 703 So.2d at 182.
The petition in the instant case alleged that State Farm's refusal to pay the Bests' claim under the Renter's Policy was "arbitrary, capricious and without probable cause." The petition further stated that State Farm was "in breach of its duty of good faith and fair dealing to [sic] insured." Therefore, we find that the petition alleges sufficient facts, which, if true, state a cause of action under La. R.S. 22:658. This assignment of error is without merit.
State Farm Assignment of Error No. 3: The trial court erred by awarding penalties under La. R.S. 22:658, because the Bests failed to prove that State Farm's denial of their claim was arbitrary, capricious, or without probable cause.
State Farm further claims that the Bests failed to prove that State Farm's failure to pay their claim was arbitrary and capricious and without probable cause. In Reed v. State Farm Mutual Automobile Insurance Co., 03-0107 (La.10/21/03), 857 So.2d 1012, the Louisiana Supreme Court stated that "[w]hether or not a refusal to pay [an insurance claim] is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action. . . ." 03-0107, p. 14, 857 So.2d at 1021. Further the court stated that "[b]ecause the question is essentially a factual issue, the trial court's finding should not be disturbed on *680 appeal absent manifest error." Id. See also Scott v. Insurance Co. of North America, 485 So.2d 50, 52 (La.1986).
In the instant case the trial court found that State Farm's conduct was not improper when the Bests' claim was initially denied. The trial court did find, however, that after State Farm was notified of the findings of the claims adjusters for the Owner's Policy, the actions of State Farm were arbitrary and capricious. The trial court judge stated that rather than re-inspecting the Apartment or reviewing the claims file for the Owner's Policy, State Farm simply denied the Best's claim a second time. The trial court judge found this inaction to be arbitrary and capricious. Because there is ample support for this factual finding, we do not find it to be manifestly erroneous or clearly wrong. Thus, we cannot disturb it on appeal. Rosell, 549 So.2d at 844. This assignment of error is without merit.
Bests Assignment of Error: The trial court erred in finding that the 2006 amendments to La. R.S. 22:658 were not applicable to their claims.
The Bests contend that although the 2006 amendments to La. R.S. 22:658 are not retroactive, the amendments are nevertheless applicable to their claim. Their contention is based on their assertion that State Farm's bad faith conduct extended beyond the August 15, 2006 effective date of the amendments. They particularly contend that State Farm's failure to pay their claim within thirty days after Mr. Best had provided to State Farm the measurements of the water lines on the properties adjacent to the duplex was an arbitrary and capricious failure to pay their claim and that the failure occurred after the effective date of the 2006 amendments.
The petition in the instant case alleged that on or before January 3, 2006, the Bests submitted satisfactory proof of their loss to State Farm and that on January 3, 2006, they were notified by State Farm that the damage to the Apartment was caused by flood, not by wind. In a letter dated January 12, 2006, the Bests notified State Farm in writing that in connection with Mrs. Allain's claim under the Owner's Policy, State Farm had determined that the second story of the duplex was damaged by wind and not by flooding. Mr. Taranto replied to the letter dated January 12, in a letter dated January 25, 2006. In the January 25 letter Mr. Taranto stated that State Farm's determination regarding the cause of damage to the second story of the Apartment remained the same. State Farm maintained its position that flooding caused the damage to the second story of the Apartment even though State Farm had previously determined in connection with the Owner's Policy that the damage was caused by wind.
The trial court judge specifically found that there was no bad faith on the part of State Farm under the Renter's Policy regarding the original determination by State Farm of the cause of damage to the Apartment. The trial court judge did, however, find that State Farm acted in bad faith and that its actions were arbitrary and capricious when it failed to further investigate the Bests' claim after State Farm became aware that it had determined that the damages caused to the duplex, for purposes of the Owner's Policy, were caused by wind, not flooding. The trial court judge was of the opinion that State Farm acted in bad faith and in an arbitrary and capricious manner in not even attempting to reconcile the contradictory determinations made with respect to the cause of the damage to the duplex.
*681 In McDuffie v. ACandS, Inc., 00-2745, p. 4 (La.App. 4 Cir. 2/14/01), 781 So.2d 623, 625, this Court held that "[t]he law in effect at the time appellants' cause of action arose is the law which is applied to their case." In the instant case the trial court judge found that the cause of action under La. R.S. 22:658 arose when State Farm failed to pay the Bests' claim within thirty days after the Bests' had provided State Farm with notice that State Farm had paid Mrs. Allain under the Owner's Policy, because State Farm found that the damage to the duplex was caused by wind, not by flooding. We agree with this finding. Even though State Farm's failure to pay the Bests' claim extended beyond the effective date of the 2006 amendments to La. R.S. 22:658, their cause of action arose prior to the effective date.
At least one other Louisiana appellate court has specifically considered when amendments to La. R.S. 22:658 and a very similar statute, La. R.S. 22:1220, are applicable in particular fact situations. In Geraci v. Byrne, 06-58 (La.App. 5 Cir. 6/28/06), 934 So.2d 263, writ denied, 06-1850 (La.11/9/06), 941 So.2d 42, the Louisiana Fifth Circuit Court of Appeal was presented with a situation in which the insurer was notified in April of 2003, of the plaintiff's claims under a policy that included uninsured motorist coverage. In July of 2003, the claims adjuster for the insurer was presented with documentation of the loss. Effective August 15, 2003, La. R.S. 22:658 was amended to eliminate the provision requiring the payment of attorney's fees in the event of an arbitrary and capricious failure to pay a covered insurance claim. No offer to settle the insurance claim was ever forthcoming.
The Fifth Circuit held in Geraci that the cause of action for the insurer's arbitrary and capricious refusal to settle the insurance claim arose prior to August 15, 2003. Therefore, the version of La. R.S. 22:658 that was in effect at the time that the cause of action arose was applicable, and the plaintiff was entitled to attorney's fees.
Based on the foregoing discussion and on the principle that penal statutes, such as La. R.S. 22:658, are to be strictly construed,[3] we find that the Bests are not entitled to the increased penalty provided by the 2006 amendments to La. R.S. 22:658. This assignment of error is without merit.

DECREE
The trial court's factual findings were not manifestly erroneous or clearly wrong, and the trial court correctly applied the applicable law. The judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Because of the dark color of the brick on the outside of the duplex where he resided, Mr. Best could not determine its water line.
[2] Mr. Taranto's name is spelled in various ways throughout the record, but we will use this spelling throughout this opinion, because this is the way that his name was spelled in correspondence that he signed.
[3] See, e.g., State Farm Mut. Auto. Ins. Co., 03-0107, pp. 12-13 (La.10/21/03), 857 So.2d 1012, 1020; Johnson v. Misirci, 06-1136, p. 10 (La.App. 4 Cir. 3/28/07), 955 So.2d 715, 721-22, writ denied, 07-0849 (La.6/15/07), 958 So.2d 1194.